PATRICIA BUTLER *vs.* VERIZON NEW ENGLAND, INC.

No. 06-P-572.

Essex. December 7, 2006. - February 26, 2007.

Present: PERRETTA, LAURENCE, & GRASSO, JJ.

*Labor,* Federal preemption, Collective bargaining. *Federal Preemption. Anti-Discrimination Law,* Handicap. *Contract,* Collective bargaining contract.

Federal preemption principles arising under § 301 of the Federal Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) (1994), did not require dismissal of a unionized employee's complaint against her employer alleging handicap discrimination in violation of G. L. c. 151B, in circumstances where the claim asserted a nonnegotiable State law right independent of the collective bargaining agreement between the employer and the union. [319-324]

CIVIL ACTION commenced in the Superior Court Department on July 22, 2005.

Motions to dismiss and for reconsideration were heard by *Richard E. Welch, III,* J.

*Nancy A. Newark* for the plaintiff.

*Brian H. Lamkin* for the defendant.

GRASSO, J. Patricia Butler appeals from a judgment dismissing her complaint against Verizon New England, Inc. (Verizon), alleging handicap discrimination in violation of G. L. c. 151B. The narrow question presented is whether Federal preemption principles arising under § 301 of the Federal Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) (1994), require dismissal of Butler's complaint. See *Allis-Chalmers Corp.* v. *Lueck,* 471 U.S. 202, 212-213 (1985) (*Lueck*). We conclude that Butler's action is not preempted and reverse the judgment of dismissal. See *Lingle* v. *Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 412-413 (1988) (*Lingle*).

1. *Background.* For purposes of Verizon's motion, we consider

the pertinent factual allegations of the complaint in the light most favorable to Butler. See *Nader* v. *Citron*, 372 Mass. 96, 97-98 (1977). Butler worked for Verizon for twenty years as a central office technician. During much of that time she worked at a Verizon location in Lowell, where she lived. Butler is also a member of the International Brotherhood of Electrical Workers (union), with whom Verizon has a collective bargaining agreement (CBA).

In 1989, Butler was diagnosed with multiple sclerosis. Her illness affects her mobility and use of her lower extremities, permitting her to walk or drive only for short periods of time. Initially, she was able to perform the essential functions of her job with reasonable accommodation. For example, at her request, Verizon installed an electric door opener at her workplace to accommodate her illness.

In October, 2002, as part of a company-wide work force adjustment, Verizon relocated Butler's entire work group from Lowell to Manchester, New Hampshire. Butler sought an accommodation from Verizon, asserting that her illness prevented her from driving long distances and that the extra driving time would aggravate her illness. She requested that Verizon not transfer her to Manchester and allow her to remain in Lowell. Verizon denied this request.

Butler then took leave under the Family and Medical Leave Act. When her leave expired in January, 2003, she returned to work. Verizon modified her work schedule to permit her to commute to Manchester with a coworker to reduce the stress of driving. According to Butler, this arrangement proved unsatisfactory because of frequent schedule conflicts with her coworker due to days off and appointments. Butler again requested that she be transferred back to Lowell, and Verizon again denied her request. In May, 2003, Butler retired, fearing that if she stayed she would miss too much work, get fired, and lose valuable retirement benefits.

After lodging a complaint with the Massachusetts Commission Against Discrimination (MCAD), Butler commenced an action in Superior Court alleging that Verizon's failure to accommodate her illness amounted to handicap discrimination in

violation of G. L. c. 151B.[1] Verizon moved to dismiss Butler's complaint pursuant to Mass.R.Civ.P. 12(b)(1), 365 Mass. 754 (1974), asserting lack of subject matter jurisdiction,[2] and under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), asserting that her claim was preempted by § 301 of the LMRA because it "directly and unavoidably implicate[s] numerous provisions of the [CBA] between Verizon and the Union." On the materials before him, the judge concluded that § 301 of the LMRA preempted Butler's action.[3] See *Lueck*, 471 U.S. at 212. We disagree.

2. *Discussion.* Whether Butler's action is preempted turns on whether her claim of discrimination under G. L. c. 151B asserts a nonnegotiable State law right independent of the CBA, see *Lingle*, 486 U.S. at 412, or whether the claim is "inextricably intertwined" with that agreement. See *Lueck*, 471 U.S. at 213. The parties do not dispute that in considering Verizon's motion to dismiss, the judge had before him only a portion of the CBA and not the entire agreement. Butler makes much of this in framing her arguments. She contends that without discovery and the opportunity to evaluate her G. L. c. 151B claim in light of the entire CBA, it cannot be said that her claim is "inextricably interconnected" with the interpretation of the CBA.[4] Relying on *Wright* v. *Universal Maritime Serv. Corp.*, 525 U.S. 70, 80

[1]Butler did not file a grievance under the CBA regarding Verizon's failure to accommodate her request for transfer to Lowell or its failure to request a waiver of force adjustment provisions on her behalf.

Although not material to our decision, Butler's complaint alleges that the union challenged the transfer of the entire work group from Lowell to Manchester and, subsequent to Butler's retirement, was successful in that challenge, with all individuals in the work group moved back to Lowell.

[2]Verizon also contended that the Superior Court lacked subject matter jurisdiction because Butler had failed to exhaust her administrative remedies under the CBA. Verizon maintained that Butler was required to resort to the grievance procedure of the CBA before seeking judicial relief. The judge rejected this argument.

[3]Verizon attached to its motion portions of the CBA, particularly art. G25, which governs work force adjustments and relocations and the procedures to be followed in implementing a work force adjustment. The parties do not contend that by considering this attachment the judge converted the motion to dismiss into a motion for summary judgment.

[4]At oral argument, Verizon conceded that the CBA does not specifically address handicap discrimination or reasonable accommodation. However, Verizon argues that the lack of such specific provision is not relevant because the

(1998), Butler argues that before a CBA may supersede an employee's statutory right to claim employment discrimination or her right to a judicial forum for such a claim, the language in the CBA must be clear and unmistakable. Even then, Butler would have it, the LMRA would not preempt her G. L. c. 151B claim unless a mandatory grievance and arbitration procedure in the CBA specifically addressed the handling of a handicap discrimination or reasonable accommodation claim. A mandatory, but general, provision to grieve and arbitrate disputes would not suffice to require preemption of her State law claim.[5] See *Lingle*, 486 U.S. at 412-413 ("mere fact that a broad contractual protection . . . may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state-law violation dependent upon the terms of the private contract" so as to require preemption).

For its part, Verizon contends that in the particular circumstances of this case, whether the CBA specifically addresses handicap discrimination or reasonable accommodation is irrelevant because the accommodation requested by Butler (transfer back to Lowell) implicates company-wide work force adjustment provisions that are specifically addressed in the CBA. Verizon maintains that because (1) the accommodation requested would arguably require it to violate the CBA, and (2) such an accommodation is not "reasonable" and would defeat Butler's claim of handicap discrimination, her claim is inextricably intertwined with the reduction in force provisions of the CBA so as to require preemption. See *US Airways, Inc.* v. *Barnett*, 535 U.S. 391, 394 (2002) (*Barnett*) (under Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. [1994] [ADA], absent special circumstances, "to show that a requested accommodation conflicts with the rules of a seniority system is ordinarily to show that the accommodation is not 'reasonable' "). See also *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813, 816 n.5 (1997) (Federal cases

accommodation requested by Butler, a transfer to Lowell, implicates company-wide work force adjustment provisions that are specifically addressed in the CBA.

[5] At oral argument, Butler conceded that if the CBA were to address how Verizon must handle reasonable accommodation claims, then a State law claim alleging such handicap discrimination would be inextricably intertwined with, and preempted by, the CBA.

decided under ADA serve as guide to interpretation of G. L. c. 151B).

We reject both parties' attempts at formulating the relevant issue. Whether a claim of discrimination is so "inextricably intertwined" with the CBA as to require dismissal on preemption grounds obviously requires consideration of the pertinent CBA provisions. After considering Butler's complaint and the portions of the CBA cited by Verizon as requiring preemption, we conclude that Butler's claim of handicap discrimination is not "inextricably intertwined" with the CBA. See *Lingle, supra.*

In *Lingle, supra,* the United States Supreme Court considered whether an employee covered by a CBA that provided a contractual remedy for discharge without just cause could also enforce a State law remedy for retaliatory discharge. *Id.* at 401. There, the employer discharged the employee for filing a false workers' compensation claim. *Ibid.* The employee and the union grieved the discharge under a CBA that prohibited discharge except for "proper" or "just" cause and provided a procedure for arbitration of "grievances," broadly defined as encompassing "any dispute between . . . the Employer and any employee, concerning the effect, interpretation, application, claim of breach or violation of this Agreement." *Id.* at 401-402. An arbitrator ruled in the employee's favor and ordered reinstatement with back pay. *Id.* at 402. Meanwhile, the employee sued for retaliatory discharge, alleging that she had been discharged for exercising her rights under the State's workers' compensation law. *Ibid.* Rejecting the employer's contention that the claim for retaliatory discharge was preempted by § 301 of the LMRA, the Court concluded that the State law remedy for retaliatory discharge was independent of the contractual remedy contained in the CBA. *Id.* at 407. "[Section] 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Id.* at 409.

Here, Butler's claim of handicap discrimination, like that in *Lingle, supra,* is not "inextricably intertwined" with the pertinent terms of the CBA. Butler's claim that Verizon unlawfully dis-

criminated against her by failing to accommodate her handicap does not arise from any contractual right established under the CBA and is distinct from any other claim that she may have thereunder. Nor does her claim depend upon interpretation of the CBA. In subsequent exposition of the meaning and scope of § 301 preemption set forth in *Lueck, supra,* and *Lingle, supra,* the United States Supreme Court has underscored "that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and . . . it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . (and not whether a grievance arising from 'precisely the same set of facts' could be pursued . . . ) that decides whether a state cause of action may go forward." *Livadas* v. *Bradshaw,* 512 U.S. 107, 123-124 (1994) (footnote omitted). "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.* at 124.

This case is markedly different from *Lueck,* 471 U.S. at 216, where resolution of the employee's State law claim depended on the meaning of a CBA because the duties imposed and rights established under State law derived from the rights and obligations established by the CBA.[6] In *Lueck,* the CBA provided the basis not only for the benefits claimed by the employee, but also for the right to payments in a timely manner, the alleged violation of which formed the basis of the State tort of bad faith handling of an insurance claim. *Id.* at 214-218. In considering whether the State tort remedy could be applied to the employer's handling of a claim for disability benefits authorized by the collective bargaining agreement, the Court observed that the State tort remedy "exists for breach of a 'duty devolv[ed] upon the insurer by reasonable implication from the express terms of the contract,' the scope of which, crucially, is 'ascertained from a consideration of the contract itself.' " *Id.* at 216, quoting from *Hilker* v. *Western Auto. Ins. Co.,* 204 Wis. 1, 16 (1931). Because

---

[6]Nor is this case like *Blanchette* v. *School Comm. of Westwood,* 427 Mass. 176 (1998), which involved not preemption principles, but those of issue preclusion, waiver, and estoppel.

the parties' agreement as to how a benefit claim would be handled was necessarily relevant to the State tort alleging that the claim was handled in a dilatory manner, § 301 preempted application of the State tort remedy. *Id.* at 218-219.

Here, as in *Lingle, supra,* and unlike in *Lueck, supra,* Butler's State law remedy for handicap discrimination is independent of the CBA between Verizon and the union in the sense of "independent" that matters for § 301 preemption purposes: resolution of Butler's State law claim of handicap discrimination does not require construing the CBA. See *Lingle, supra* at 406-407. While analysis of Butler's claim of handicap discrimination might well involve attention to the same factual considerations as the contractual determination whether the accommodation (transfer to Lowell) implicates the work force adjustment provisions of the CBA, such parallelism does not render her handicap discrimination claim dependent on analysis of the CBA. *Id.* at 408. "[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 409-410.

We are not persuaded that the CBA terms relating to work force adjustment identified by Verizon transform Butler's claim of handicap discrimination by failure to accommodate into one that is "inextricably intertwined" with the CBA. We recognize that, at summary judgment or at trial, seniority or other provisions of the CBA such as those addressing work force adjustment may enable Verizon to prevent Butler from satisfying her burden of establishing that it failed to provide her with a reasonable accommodation. See *Russell* v. *Cooley Dickinson Hosp., Inc.,* 437 Mass. 443, 453 (2002). See also *Barnett,* 535 U.S. at 393-394. Nevertheless, such evidence does not render Butler's claim "inextricably intertwined" with the CBA so as to require § 301 preemption. Even under *Barnett, supra,* an employee is "free to present evidence of special circumstances that make 'reasonable' a seniority rule exception in the particular case." *Id.* at 394. Moreover, "the employee's initial request for an ac-

commodation . . . triggers the employer's obligation to participate in the interactive process of determining one." *Russell* v. *Cooley Dickinson Hosp., Inc.*, 437 Mass. at 457, quoting from *Taylor* v. *Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir.), cert. denied, 519 U.S. 1029 (1996). See *Andover Hous. Authy.* v. *Shkolnik*, 443 Mass. 300, 308 (2005). The factual variables that may make summary judgment inappropriate speak even more forcefully to the impropriety of dismissal on preemption grounds of an independent State law claim such as Butler's before discovery and before opportunity to demonstrate, if necessary, that special circumstances warrant a finding that the requested accommodation is "reasonable" notwithstanding any reduction in force provisions to the contrary. See *Barnett, supra* at 405.

We also reject Verizon's contention that Butler's references to the CBA in her complaint transform her statutory claim into one under the CBA itself or so implicate the CBA as to render her claim inextricably intertwined with it. This attempt to recharacterize Butler's complaint ignores the gravamen of her claim, which is that Verizon violated her rights under G. L. c. 151B, not those contained in a CBA, by failing to make reasonable accommodation for her handicap. The fact that further factual allegations of Butler's complaint may seek to counter Verizon's anticipated defense that the requested accommodation would violate CBA provisions does not transform that complaint into a claim under the CBA or one that requires interpretation of the CBA for resolution. "The cause of action [Butler] asserts arises not out of contract, but out of [State law, G. L. c. 151B], and is distinct from any right conferred by the collective-bargaining agreement." *Wright* v. *Universal Maritime Serv. Corp.*, 525 U.S. at 79.

As Verizon did not cross-appeal from the judge's denial of its Mass.R.Civ.P. 12(b)(1) motion asserting that the Superior Court lacked subject matter jurisdiction due to Butler's failure to exhaust administrative remedies, we need not resolve that issue.[7] See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

---

[7]In its brief, Verizon abandoned so much of this contention as asserted that the Superior Court lacked jurisdiction because of Butler's failure to exhaust administrative remedies at the MCAD prior to filing suit.

In any event, that contention would fail for the reason just discussed. The essence of Butler's complaint is that Verizon's failure to accommodate her by retransferring her to Lowell violated the statutory prohibition against discrimination in G. L. c. 151B, not a contractual right under the CBA. Moreover, from all that appears, and as conceded by Verizon, nothing in the available portions of the CBA makes Butler's claim of handicap discrimination a subject of mandatory grievance and arbitration under the CBA so as to require that Butler grieve Verizon's failure to transfer her before commencing a statutory action.

The judgment of dismissal is reversed and the matter is remanded to the Superior Court for further proceedings.

*So ordered.*